## STAFFORD v. ALBERS BROS. MILLING CO.

(Circuit Court of Appeals, Ninth Circuit. ˙ February 24, 1920.   Rehearing
Denied April 5, 1920.)

No. 3367.

PATENTS ☞328—FOR PROCESS OF BURNING CRUDE PETROLEUM NOT INFRINGED.
    The Stafford patent, No. 860,418, for a process of effecting combustion of
    crude petroleum, consisting in the continuing discharge into a confined
    area of liquid oil, at a distance from the point of combustion, of an
    oxygenous fluid under pressure sufficient to effect substantially perfect
    combustion, *held* not infringed, in that defendant's process did not differ
    from those disclosed by patents prior to plaintiff's patent.

Appeal from the District Court of the United States for the District
of Oregon; Robert S. Bean, Judge.

Suit by Jerome F. Stafford against Albers Bros. Milling Company.
From a decree for defendant, plaintiff appeals.   Affirmed.

Joseph L. Atkins, of Portland, Or., for appellant.
James H. Cary, R. A. Leiter, and Griffith, Leiter & Allen, all of Port-
land, Or., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge.   In a suit for infringement of letters pat-
ent 860,418, issued July 16, 1907, to the appellant, the court below ad-
judged that the appellee had not infringed.   The patent is for "a pro-
cess or method of burning crude petroleum."   The invention is based
upon the introduction of an oxygenous fluid under pressure into a con-
fined body of liquid oil a short distance before it reaches the point of
combustion, which is the point of its liberation from confinement.   The
apparatus is shown in the accompanying cut:

In the specification it is said:

"It is found in practice that the result of the process herein defined is the discharge of the oil from the burner, indicated by the numeral 4 in the drawing, in finely comminuted form, or in a spray, with the result that a perfect combustion of the oil ensues. The result of discharging the oxygenous fluid into the confined stream of oil at a point approximate to, but well removed from, the burner 4 is distinct from that obtained by mere atomization, or by atomization derived from discharge of air against or into the oil at its point of liberation. Atomization or comminution of the oil might be derived by pressure only, such as might be produced from discharge of the pipe 11 into the tank 1, for instance, and atomization of an air current discharged against the oil at its point of liberation is known in the art. From either or both of these methods my invention is distinguished, both in the mode of operation and in the results obtained."

The claim is as follows:

"The process or method of effecting combustion of crude petroleum or the like, which consists in the continuing discharge into a confined area of liquid oil, at a distance from the point at which combustion of the oil takes place, of an oxygenous fluid under pressure sufficient to effect substantially perfect combustion simply upon ignition in air of the liberated oil, discharging the oil into the atmosphere, thereby effecting its comminution through reduction of the said pressure, and igniting the oil substantially at its point of discharge."

The apparatus used by the appellee is shown in the accompanying cut. The end of the burner is at 14. A constant current of steam is introduced into the pipe 7 and a constant stream of oil is brought through pipe 6 to 8 where it is discharged through orifices at right angles to the axis of the pipe.

The court below, in dismissing the bill, found that the appellee's burner was the type in common use prior to the appellant's patent, and that it was one in which the oil and steam do not come in contact until the oil is discharged from the oil pipe, thereby causing an atomization of the oil and steam, and not a commingling thereof while they are confined under pressure.

In the appellant's process there is a continuing discharge of an oxygenous fluid under pressure into a confined stream of liquid oil. The reverse is true of the appellee's process. In the field of the prior art are found a large number of patents covering processes and devices for the burning of crude oil, in all of which oil and air or steam are confined under pressure to aid the combustion of the oil.

The patent to James Fisher of December 2, 1902, No. 715,044, discloses the use of steam in a way similar to the appellee's process. In this patent there is an inner oil tube and an outer steam pipe or mixing chamber, and it discloses the same method of burning oil as that of the

appellee. There is a constricted aperture for the discharge of mixed oil and steam to the burner. A disc placed near the discharge orifice further retards the passage of the steam and oil, so as to thoroughly mix them before the pass through the outlet.

"Besides this, the whirling disc serves to thoroughly atomize the oil and steam in such a manner that a wide and better flame is secured," etc.

The patent to J. A. Meyer, July 1, 1902, No. 703,706, has for the delivery of the steam an inner tube perforated along its length with numerous apertures whereby steam is forced into an outer chamber into which oil is discharged through a pipe. The specification says:

"In the operation the best results are obtained by feeding the oil under pressure. * * * The steam, blowing through the perforations, * * * mixes with the body of oil surrounding the same, forming an intimate admixture, dividing the oil into atomic particles, which are kept violently agitated in their passage through the perforations ` * * * issuing through the last of these into the tip A–4, from which it escapes into an atomized spray, which burns without soot."

The patent to Frank E. Feeron, October 25, 1898, No. 613,131, discloses the delivery of oil into a mixing chamber, which is acted upon by incoming steam or air, and is caused to pass through a pipe to the burner; "the oil being thus thoroughly commingled and mixed with steam or air, as the case may be. It will, of course, be understood that the oil, as well as the steam or air, is forced into the mixing chamber under pressure;" the oil being delivered at the burning jets "in a thoroughly comminuted spray."

The patent to William F. Hogan, of June 19, 1906, No. 823,866, shows an outer steam pipe into which "steam is admitted under pressure," and an inner oil pipe, the end of which is closed, but a lateral hole permits the discharge of a jet of oil into the current of the steam, as in the appellee's process. The specification says that the oil, being forcibly driven by the jet of steam, "is finely atomized before passing out" through the connecting tube to the burner.

The appellant contends that in his process the discharge of the gas into the oil pipe under high pressure results in a solution of the gas in the oil, which is an intimate union of the two, and that the release of the pressure under which they are brought together in confinement results in a springing apart, which scatters the liquid into the finest form of comminution, different from the atomization of the oil in other processes, and that the process used by the appellee accomplishes the same result by high pressure within the steam chamber into which the oil is dicharged. To this it is to be said:

First, that the appellant's claim makes no reference to any specific pressure. All it calls for is "pressure sufficient to effect substantially perfect combustion" upon ignition. Again, in his specification the appellant distinguishes his invention from one only of the processes of the prior art, that which he calls atomization derived from discharge of air against or into the oil "at its point of liberation." Second, there is no convincing proof that the appellee uses high pressure, or forces the oil and steam into a different solution, or different degree of comminution, from that which was accomplished in some of the prior patents

above adverted to. The appellant's expert witness was unable to say whether the appellee's device, which he saw in operation, atomized the oil inside of the burner or not. He testified that it appeared to effect good combustion, which, he said, might have been accomplished without atomization. He testified, however, that he believed there was pressure in the steam chamber, and that he based that belief on the speed with which the contents were shot through the end of the burner. It may be assumed that there was pressure in the steam chamber, but it does not follow that there was infringement of the appellant's process.

It is obvious that pressure is essential to all processes for burning crude oil with the aid of air or steam; and in the specifications of several of the prior patents the assertion is made that perfect combustion is attained. But the appellant says that nowhere in the prior art is any attention paid to degree of pressure as a comminuting agent, and that pressure was understood as nothing more than a driving agent. We are unable to assent to this; but, taking it to be true, the fact remains that the appellee is not shown to have used pressure otherwise than it was used in the prior art.

In brief, the evidence is that the essential features of the appellee's process were disclosed in patents issued long prior to the date of the appellant's invention. If those patents did not anticipate the appellant's process, the appellee's process cannot be said to infringe it. Broadway Towel Supply Co. v. Brown-Meyer Co., 245 Fed. 659, 158 C. C. A. 87; Cleveland Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 135 Fed. 783, 68 C. C. A. 485.

The decree is affirmed.